IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LASALLE BANK, NATIONAL ASSOCIATION, as Successor Trustee to FIRST STATE BANK AND TRUST COMPANY OF FRANKLIN PARK, as Trustee under Trust Agreement Dated July 30, 1982 a/k/a Trust No. 866; LASALLE BANK, NATIONAL ASSOCIATION, as Successor Trustee to FIRST STATE BANK AND TRUST COMPANY OF FRANKLIN PARK, as Trustee under Trust Agreement Dated July 30, 1982, a/k/a Trust No. 867; DONNA J. KRILICH; and ROBERT R. KRILICH, SR., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 05 C 3191 |
| v. | ) ) | |
| CITY OF OAKBROOK TERRACE, an Illinois Municipal Corporation, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiffs LaSalle Bank, National Association, as Successor Trustee to First State Bank and Trust Company of Franklin Park, as Trustee Under Trust Agreements dated July 30, 1982, and known as Trust Nos. 866 and 867 ("LaSalle Bank"), Donna J. Krilich and Robert R. Krilich, Sr. (collectively, "Plaintiffs") sued Defendant City of Oakbrook Terrace ("Defendant" or the "City") alleging: (1) a 42 U.S.C. §1983 violation of substantive due process rights under the Fourteenth Amendment (Count I); (2) a Section 1983 violation of equal protection under the Fourteenth and Fifth Amendments (Count II); (3) a Section 1983 violation of the First

Amendment right to seek judicial relief without retaliation (Count III); and (4) a Section 1983 violation of the Fifth Amendment right to just compensation (Count IV).[1] Defendant moves to dismiss Counts I and IV pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] Additionally, Defendant requests that the Court abstain from exercising its jurisdiction over Counts II and III. For the following reasons, the Court grants Defendant's motion to dismiss as to Count IV, and denies Defendant's motion as to Counts I, II and III.

## BACKGROUND

### I. The Parties

LaSalle Bank is the record titleholder of the property located in the City that is the subject of this dispute (the "Property"). (R. 1-1; Compl. at ¶ 3.) Robert R. Krilich ("Krilich") is the beneficial owner of the Property. (*Id*. at ¶ 4.) Donna J. Krilich is married to Krilich and holds a power of attorney, including the power of direction, over the land trusts that are the record titleholders of the Property. (*Id*. at ¶ 5.) The City is a municipal corporation located in DuPage County, Illinois. (*Id*. at ¶ 6.)

### II. The Property

---

[1] Plaintiffs' complaint contains four additional causes of action that Defendant does not move to dismiss.

[2] Defendant states that it brings its motion to dismiss Count IV pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant argues that the Court should dismiss Count IV because it is not ripe for review. Arguing that a claim is not ripe for review, however, challenges whether a court has subject matter jurisdiction over the claim, not whether plaintiff has failed to state a claim under Rule 12(b)(6). *See Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000) ("we have subject matter jurisdiction over only those cases that are 'ripe for adjudication').

The Property consists of roughly 100 acres.[3] (*Id*. at ¶ 9.) In approximately 1966, the Property was part of DuPage County, zoned R-3 with a Special Use for multiple family development and approved for the development of approximately 2,000 multiple family dwelling units. (*Id*. at ¶ 15.) On or about June 23, 1972, pursuant to an agreement (the "Annexation Agreement"), Defendant annexed the Property. (*Id*. at ¶¶ 16, 17.) The Annexation Agreement, which was effective through June 29, 1986, allowed for the construction of 2,731 multi-family residential dwelling units. (*Id*. at ¶¶ 17, 18.) Defendant zoned the Property within the B-4 Service District with a Special Use for a Planned Unit Development. (*Id*. at ¶ 18.) On November 28, 1986 (after the expiration of the Annexation Agreement), Defendant entered into another agreement with Plaintiffs (the "1986 Agreement"), which recognized that Plaintiffs "were vested with the right to complete the development of the Property in accord with the provisions of the Annexation Agreement." (*Id*. at ¶ 20.)

According to Plaintiffs, "[t]his case centers on the actions taken by Defendant . . . with respect to the Property." (*Id*. at ¶ 7.) Plaintiffs allege that Defendant's actions "effected a regulatory taking of substantially all economic viability" of parcels of the Property that have not yet been fully developed, and "interfered with [Plaintiffs'] reasonable investment-backed expectations." (*Id*. at ¶ 12.) Defendant's actions that are at issue are described below.

## III. Down-Zoning of the Property

Plaintiffs allege that Defendant "took steps to amend its Official Comprehensive Plan and down zone the Property" after learning that Plaintiffs intended to sell part of the Property. (*Id*. at

---

[3] The Property initially included 120 acres. Twenty acres were sold and developed as part of Lincoln Center. The owners of those twenty acres are not parties to this lawsuit. (*Id*. at ¶ 9.)

3

¶ 26.) On March 25, 2003, Defendant passed an ordinance amending its Official Comprehensive Plan and creating a new area designated the "Unit 5 Area." (*Id*. at ¶ 27.) The "Unit 5 Area" consists of approximately 236 acres of land and encompasses the Property. (*Id*.) Defendant also created a new zoning district called "M-U" or "Mixed Use Zoning District." (*Id*. at ¶ 28.) On January 13, 2004, Defendant re-zoned the Property from B-4 with a Special Use for a Planned Unit Development to "M-U." (*Id*. at ¶ 29.) As a result of the zoning change, the Property is now zoned for the construction of approximately 300 dwelling units, opposed to the over 2,700 units for which it was previously zoned. (*Id*. at ¶ 30.)

## IV. Stormwater Exempt List

In 1991, DuPage County adopted a Stormwater Ordinance that imposes certain regulations. (*Id*. at ¶¶ 32, 33.) The Stormwater Ordinance allows municipalities to exempt certain properties from the regulations. (*Id*. at ¶ 33.) In 1992, Defendant adopted the Stormwater Ordinance and placed the Property on the Stormwater Exempt List. (*Id*. at ¶ 36.) In 2003, Defendant removed the Property from the Stormwater Exempt List. (*Id*. at ¶¶ 38, 39.) According to Plaintiffs, removal of the Property from the Stormwater Exempt List conflicts with the terms of the Annexation Agreement and the 1986 Agreement. (*Id*. at ¶¶ 41-43.)

## V. Water Company Development

Plaintiffs allege that the Annexation Agreement authorized and directed them to construct and support water mains to serve the Property. (*Id*. at ¶ 44.) O.B.T. Service Corp., a water company Krilich formed and operated, owned and maintained those water mains. (*Id*.)

On May 7, 2004, Defendant informed Plaintiffs that it intended to acquire both temporary and permanent easements over the Property "for the purported purpose of installing, maintaining,

4

and using water mains to extend and connect the municipal water system." (*Id*. at ¶ 46.) On May 11, 2004, Defendant passed an ordinance allowing for those easements through either "negotiation or condemnation." (*Id*. at ¶ 47.) Plaintiffs allege that "[t]his action is designed to effectively put the O.B.T. Service Corp. out of business and render its facilities, structures and assets obsolete and of no value." (*Id*. at ¶ 48.)

## VI.     Sign Litigation

At the time Plaintiffs filed their complaint, there was a sign located on the Property that advertised portions of the Property that were for sale. (*Id*. at ¶ 52.) According to Plaintiffs, the sign conforms to the requirements set forth in the 1965 Sign Ordinance.[4] (*Id*.) On October 15, 2003, Defendant charged Krilich's Chief Executive Officer with "quasi-criminal conduct" for violating the maximum height and area requirements for signs and for failure to remove the sign upon 80% occupancy. (*Id*. at ¶ 53.) Defendant caused the dismissal of the citation on March 25, 2004. (*Id*. at ¶ 54.) On June 3, 2004, however, Defendant filed a complaint for injunctive and other relief regarding the same sign. (*Id*. at ¶ 55.) The presiding court dismissed that complaint without prejudice on January 5, 2005. (*Id*.)

## VII.    Settlement Agreement Dispute

In 1996, Defendant sued Krilich for allegedly filling certain wetlands and altering drainage on the Property without permits. (*Id*. at ¶ 57.) On March 15, 1999, the parties entered into a settlement agreement (the "1999 Settlement Agreement"), which resolved Defendant's

---

[4] Plaintiffs claim that the 1965 Sign Ordinance governs their conduct because it is referenced in both the Annexation Agreement and the 1986 Agreement. (*Id*. at ¶ 51.) According to Plaintiffs, Defendant does not recognize the applicability of the 1965 Sign Ordinance. (*Id*. at ¶ 56.)

5

claims. (*Id*.) On March 24, 2004, however, Defendant sought to reinstate its 1996 complaint and/or to enforce the 1999 Settlement Agreement. (*Id*. at ¶ 58.) Plaintiffs allege that Defendant is pursuing this litigation "[d]espite being provided with an expert opinion from engineer William Lindley stating that Krilich substantially complied with the terms of the Settlement Agreement." (*Id*. at ¶ 59.)

**VIII. Interactions Between the Parties that Plaintiffs Allege Resulted in Defendant's Ill-Will Toward Krilich**

Plaintiffs allege that Defendant harbors "substantial animosity and ill-will toward Krilich" because the criminal conviction of Defendant's former mayor for soliciting a bribe from Krilich cast Defendant in a bad light and caused it embarrassment. (*Id*. at 19, ¶¶ 60-62.) According to Plaintiffs, the former Mayor's son is currently a member of the City Council. (*Id*. at ¶ 63.) Plaintiffs further allege that Defendant has "ill-will" toward them because Krilich initiated litigation against Defendant on February 4, 2000 to seek a refund of building permit fees, and because Defendant "has been involved in extensive disputes and litigation with Krilich" concerning the Property. (*Id*. at ¶¶ 64-67.) According to Plaintiffs, as a result of this "ill-will," Defendant engaged in a "campaign of vindictiveness against Plaintiffs [that] includes the down zoning of Plaintiffs' property, threatening condemnation which will have the effect of putting a water company owned by Plaintiffs out of business, removing Plaintiffs' property from the Stormwater Ordinance Exempt List, reinstating previously settled litigation concerning stormwater drainage and taking repeated and baseless actions against the Plaintiffs for a claimed violation of the City's sign ordinance." (R. 17-1; Pls.' Resp. Def.'s Mot. Dismiss at 4) (citing R. 1-1; Compl. at ¶ 13.) Additionally, Defendant allegedly "threatened to take temporary and permanent easements over property along an undedicated roadway" even though Plaintiffs

6

previously submitted plans to Defendant proposing changes to the undedicated roadway. (R. 1-1; Compl. at ¶¶ 68-70.)

## ANALYSIS

I. **Legal Standard**

Defendant brings its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion tests whether plaintiff has "state[d] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court views "the complaint in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from those allegations in his or her favor." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003).

II. **Substantive Due Process Claim (Count I)**

Count I alleges a violation of Plaintiffs' substantive due process rights under the Fourteenth Amendment. Defendant argues that the existence of state judicial remedies "bar the maintenance of a substantive[] due process claim." (R. 11-1; Def.'s Mot. Dismiss at 5.) The Seventh Circuit, however, has stated that "when a substantive-due-process challenge involves only the deprivation of a property interest, a plaintiff must show 'either the inadequacy of state law remedies *or an independent constitutional violation*' before the court will even engage in [a] deferential rational-basis review." *Lee*, 330 F.3d at 467 (quoting *Doherty v. City of Chicago*, 75 F.3d 318, 323-326 (7th Cir. 1996)) (emphasis added). Plaintiffs assert that they "have alleged several independent constitutional violations by the Defendant including: (1) a §1983 violation of Plaintiffs' right to equal protection under the law under a class-of-one theory; (2) a §1983 violation of Plaintiffs' First Amendment Right to seek judicial relief without retaliation; and (3)

7

a §1983 violation of Plaintiffs' Fifth Amendment right to just compensation." (R. 17-1; Pls.' Resp. Def.'s Mot. Dismiss at 2.) In its opening brief, Defendant does not challenge whether Plaintiffs allege any independent constitutional violations sufficient to support their substantive due process claim. Defendant's failure to raise this argument in its opening brief results in a waiver of the argument. *See Luellen v. City of East Chicago*, 350 F.3d 604, 612 n.4 (7th Cir. 2003) (stating that failure to raise argument in opening brief waives the argument). Therefore, the Court denies Defendant's motion to dismiss as to Count I.

### III.     Takings Claim (Count IV)

Count IV alleges violations of Plaintiffs' right to just compensation pursuant to the Fifth Amendment. Defendant argues that the Court should dismiss Count IV because, under *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S. Ct. 3108, 87 L.Ed.2d 126 (1985), Plaintiffs' claims are not ripe for review. In *Williamson County*, "the Supreme Court articulated a special ripeness doctrine for constitutional property rights claims which preclude[s] federal courts from adjudicating land use disputes until: (1) the regulatory agency has had an opportunity to make a considered definitive decision, and (2) the property owner exhausts available state remedies for compensation." *Forseth*, 199 F.3d at 368; *see also San Remo Hotel, L.P. v. City & County of San Francisco, California*, — U.S. —, 125 S. Ct. 2491, 2506, 162 L. Ed. 2d 315 (2005); *Behavioral Inst. of Indiana, LLC v. Hobart City of Common Council*, 406 F.3d 926, 930 (7th Cir. 2005); *Patel v. City of Chicago*, 383 F.3d 569, 572-573 (7th Cir. 2004); *Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 957-958 (7th Cir. 2004).

Defendant asserts that Plaintiffs have failed to meet the second part of the *Williamson County* doctrine requiring that Plaintiffs exhaust their state remedies. Plaintiffs do not contest

Defendant's assertion.[5]  Instead, Plaintiffs argue that they need not exhaust their state remedies because "Illinois eminent domain law does not provide an adequate process to assure Plaintiffs that they will obtain the just compensation that Plaintiffs are entitled to under the Takings Clause of the Fifth Amendment of the United States Constitution."  (R. 17-1; Pls.' Resp. Def.'s Mot. Dismiss at 7.)  Indeed, under *Williamson County*, "a plaintiff may be excused from the exhaustion requirement if he demonstrates" that the his state law remedies are "unavailable or inadequate."  *Daniels v. Area Planning Comm'n of Allen County*, 306 F.3d 445, 456 (7th Cir. 2002) (citing *Williamson County*, 473 U.S. at 197, 105 S. Ct. at 3122).

Plaintiffs argue that Illinois' compensation procedures are inadequate because "[n]o reported Illinois case has recognized the [compensation] procedure suggested by the United States Supreme Court in *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 104 S.Ct. 2187 (1984)."  (R. 17-1; Pls.' Resp. Def.'s Mot. Dismiss at 8.)  *Kirby* held that Federal Rule of Civil Procedure 60(b) allows a party to "modify[] a condemnation award when there is a substantial delay between the date of valuation and the date the judgment is paid, during which time the value of the land changes materially."  467 U.S. at 17-18, 104 S.Ct. at 2198.  Plaintiffs, therefore, are essentially arguing that Illinois' compensation procedures are inadequate because they do not allow for Plaintiffs to recover all of the damages that they may be entitled to recover under Section 1983.  This argument fails.  "The Supreme Court has been clear that whether in utilizing state remedies a plaintiff will recover the full amount recoverable under section 1983 does not determine whether state remedies are adequate."  *Long v. City of Marengo*, No. 93 C.

---

[5] Plaintiffs also do not contest the applicability of *Williamson*.  Indeed, Plaintiffs allege that they "filed an action in state court for the purpose of seeking just compensation . . . for the purpose of complying with the requirements of *Williamson*."  (R. 1-1; Compl. at ¶ 14.)

20167, 1994 WL 11719, at *4 (N.D. Ill. Jan. 6, 1994) (citing *Hudson v. Palmer*, 468 U.S. 517, 535, 104 S. Ct. 3194, 3204-05, 82 L. Ed. 2d 393 (1984)). Because Plaintiffs have not demonstrated the inadequacy of Illinois' compensation procedures, their takings claim will not be ripe until they have exhausted those procedures. The Court, therefore, grants Defendant's motion as to Count IV.

**IV.     Equal Protection and Retaliation Claims (Counts II and III)**

Count II alleges Section 1983 equal protection violations of the Fifth and Fourteenth Amendments, and Count III alleges a Section 1983 violation of Plaintiffs' First Amendment right to seek judicial relief without retaliation. Defendant requests that the Court abstain from exercising jurisdiction over Counts II and III in accordance with *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Defendant argues that the Court should abstain because "two matters are pending in state court and one is pending before an administrative body involving issues which go to the heart of the Plaintiffs' equal protection claims . . . and retaliation claim." (R. 11-1; Def.'s Mot. Dismiss at 9.)

As a general rule, federal courts will not abstain from deciding cases within their jurisdiction. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-818, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). *Younger* sets forth an exception to that rule and requires federal courts to abstain from interfering with ongoing state proceedings in certain circumstances. *See Trust & Inv. Advisers, Inc. v. Hogsett*, 43 F.3d 290, 294 (7th Cir. 1994). "Over time, a three-part test has emerged for determining whether abstention under *Younger* is appropriate: (1) the judicial or judicial in nature state proceedings must be on-going; (2) the proceedings must implicate important state interests; and (3) there must be an adequate

opportunity in the state court proceeding to raise constitutional challenges." *Id*. at 295 (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L. Ed. 116 (1982)); *see also Majors v. Engelbrecht*, 149 F.3d 709, 711 (7th Cir. 1998). *Younger*, however, does not require federal courts to abstain when "(1) the 'state proceeding is motivated by a desire to harass or is conducted in bad faith,' *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611, 95 S.Ct. 1200, 1212, 43 L. Ed. 2d 482 (1975); (2) there is 'an extraordinarily pressing need for immediate equitable relief,' *Kugler v. Helfant*, 421 U.S.117, 124-125, 95 S.Ct. 1524, 1530-1531, 44 L. Ed. 2d 15 (1975); or (3) the 'challenged provision is flagrantly and patently violative of express constitutional prohibitions," *Moore*, 442 U.S. at 423, 99 S.Ct. at 2377." *Jacobson v. Vill. of Northbrook Mun. Corp.*, 824 F.2d 567, 569-570 (7th Cir. 1987).

Plaintiffs contend that *Younger* does not require that the Court abstain because "sufficient bias and harassment has been alleged."[6] (R. 17-1; Pls.' Resp. Def.'s Mot. Dismiss at 15.) As stated above, an exception to *Younger* applies when "the state proceeding is motivated by a desire to harass or is conducted in bad faith." *Huffman*, 420 U.S. at 611, 95 S. Ct. at 1212. This exception exists because "[t]he harm posed by bad faith prosecution is both immediate and great, and defending against the state proceedings would not be an adequate remedy at law because it would not ensure protection of the plaintiff's federal constitutional rights." *Collins v. County of Kendall, Illinois*, 807 F.2d 95, 98 (7th Cir. 1986) (footnote omitted). Moreover, "'[w]ith respect

---

[6] Additionally, Plaintiffs question whether abstention is appropriate in this case because, as Defendant concedes, the ongoing state proceedings do not address all of the issues that Plaintiffs raise before the Court. Plaintiffs also argue that Defendant's failure to challenge their equal protection and First Amendment arguments "is fatal to [its] *Younger* abstention argument." (R. 17-1; Pls.' Resp. Def.'s Mot. Dismiss at 14.) The Court, however, need not address these arguments because it finds that the bad faith exception to *Younger* applies.

to the interests of the State, it by definition does not have any legitimate interest in pursuing a bad faith prosecution brought to retaliate for or to deter the exercise of constitutionally protected rights.'" *Id*. at 98 n.5 (quoting *Wilson v. Thompson*, 593 F.2d 1375, 1383 (5th Cir. 1979)). The Seventh Circuit has held that "[a] plaintiff asserting bad faith prosecution as an exception to *Younger* abstention must allege specific facts to support an inference of bad faith." *Id*. at 98.

Plaintiffs allege the following facts in support of their assertion that Defendant acted in bad faith. Plaintiffs allege that Defendant harbors "substantial animosity and ill-will toward Krilich" because the criminal conviction of its former mayor for soliciting a bribe from Krilich cast Defendant in a bad light and caused it embarrassment. (R. 1-1; Compl. at 19, ¶¶ 60-62.) According to Plaintiffs, the former Mayor's son is currently a member of the City Council. (*Id*. at ¶ 63.) Plaintiffs further allege that Defendant has "ill-will" toward them because Krilich initiated litigation against Defendant on February 4, 2000 to seek a refund of building permit fees, and because Defendant "has been involved in extensive disputes and litigation with Krilich" concerning the Property. (*Id*. at ¶¶ 64-67.) According to Plaintiffs, as a result of this "ill-will," Defendant engaged in a "campaign of vindictiveness against Plaintiffs [that] includes the down zoning of Plaintiffs' property, threatening condemnation which will have the effect of putting a water company owned by Plaintiffs out of business, removing Plaintiffs' property from the Stormwater Ordinance Exempt List, reinstating previously settled litigation concerning stormwater drainage and taking repeated and baseless actions against the Plaintiffs for a claimed violation of the City's sign ordinance." (R. 17-1; Pls.' Resp. Def.'s Mot. Dismiss at 4) (citing R. 1-1; Compl. at ¶ 13.) Additionally, Defendant allegedly "threatened to take temporary and permanent easements over property along an undedicated roadway" even though Plaintiffs

12

previously submitted plans to Defendant proposing changes to the undedicated roadway.  (R. 1-1; Compl. at ¶¶ 68-70.)  Furthermore, in support of their equal protection claims, Plaintiffs allege that Defendant's unequal treatment of Plaintiffs "amounts to vindictive action of a personal nature due to totally illegitimate animus . . . arising out of the scandal involving the former mayor of the City" and previous litigation between the parties.  (*Id*. at ¶ 94.)  In support of their First Amendment claim, Plaintiffs allege that "the City has taken the actions set forth herein against [Plaintiffs] and the Property in retaliation for Krilich exercising his fundamental right to access the Courts to sue or defend [certain] actions involving the City."  (*Id*. at ¶ 97.)

Viewing the allegations in the complaint in the light most favorable to Plaintiffs, as the Court must at this stage, Plaintiffs allege sufficient facts to support an inference that Defendant acted in bad faith.  *See*, *e.g.*, *Manos v. Caira*, 162 F. Supp. 2d 979, 987 (N.D. Ill. 2001) (holding that *Younger* did not require abstention where plaintiff "alleged throughout the Complaint that defendants have acted in bad faith and have conspired to harass him with vindictive bias"); *Contreras v. City of Chicago*, No. 94-4201, 1994 WL 700263, at *3 (N.D. Ill. Dec. 13, 1994) (holding that "plaintiffs have sufficiently alleged bad faith prosecution as an exception to *Younger* abstention" where plaintiffs "allege with sufficient particularity facts supporting their charges that the defendants' actions were motivated by racial animus"); *Torres v. Frias*, 68 F. Supp. 2d 935, 939-41 (N.D. Ill. 1999) (finding that "plaintiffs present evidence which paints a convincing picture of bad faith on the part of defendants"); *New Albany DVD, LLC v. City of New Albany*, *Indiana*, 350 F. Supp. 2d 789, 796 (S.D. Ind. 2004) (finding that a series of suspicious circumstances led to "an inference of bad faith").  Therefore, the Court will not

abstain from exercising jurisdiction over Counts II and III.[7]

## CONCLUSION

For these reasons, the Court grants Defendant's motion to dismiss as to Count IV and denies Defendant's motion to dismiss as to Counts I, II and III.

Dated: January 9, 2006

ENTERED:

_____
AMY J. ST. EVE
United States District Court Judge

---

[7] The Court reaches the conclusion that the bad faith or harassment exception to the *Younger* abstention doctrine applies without commenting on whether this case otherwise satisfies the three-part *Younger* test.