IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LASALLE BANK, NATIONAL ASSOCIATION, as Successor Trustee to FIRST STATE BANK AND TRUST COMPANY OF FRANKLIN PARK, as Trustee under Trust Agreement Dated July 30, 1982 a/k/a Trust No. 866; LASALLE BANK, NATIONAL ASSOCIATION, as Successor Trustee to FIRST STATE BANK AND TRUST COMPANY OF FRANKLIN PARK, as Trustee under Trust Agreement Dated July 30, 1982, a/k/a Trust No. 867; DONNA J. KRILICH; and ROBERT R. KRILICH, SR., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) No. 05 C 3191 |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| CITY OF OAKBROOK TERRACE, an Illinois Municipal Corporation, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

In their eight-count Complaint, Plaintiffs LaSalle Bank, National Association, as Successor Trustee to First State Bank and Trust Company of Franklin Park, as Trustee Under Trust Agreements dated July 30, 1982, and known as Trust Nos. 866 and 867 ("LaSalle Bank"), Donna J. Krilich, and Robert R. Krilich, Sr. (collectively, "Plaintiffs") sued Defendant City of Oakbrook Terrace, Illinois ("Defendant" or the "City") alleging: (1) a violation of their Fourteenth Amendment substantive due process rights (Count I); (2) a violation of equal protection under the Fifth and Fourteenth Amendments (Count II); (3) a violation of their First

Amendment right to seek judicial relief without retaliation (Count III); and (4) a violation of their Fifth Amendment right to just compensation (Count IV) based on the Court's original jurisdiction. *See* 28 U.S.C. § 1331. In their Complaint, Plaintiffs also alleged common law claims based on the Court's supplemental jurisdiction, including claims for: (1) declaratory judgment based on Illinois' vested-rights doctrine (Count V); (2) declaratory judgment based on equitable estoppel (Count VI); (3) breach of contract (Count VII); and (4) unjust enrichment (Count VIII). *See* 28 U.S.C. § 1367(a).

Earlier in this litigation, Defendant filed a motion to dismiss Counts I and IV of the Complaint and for the Court to abstain from exercising its jurisdiction as to Counts II and III. The Court dismissed Plaintiffs' Fifth Amendment claim as alleged in Count IV, but denied Defendant's motion as to Counts I, II, and III. Before the Court is Defendant's summary judgment motion concerning Counts I, II, and III and Plaintiffs' summary judgment motion regarding Count V– both pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants Defendant's summary judgment motion and denies Plaintiffs' summary judgment motion. Because the Court dismisses the constitutional claims over which it has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over the remaining state law claims in Counts V, VI, VII, and VIII and dismisses them without prejudice. *See* 28 U.S.C. 1367(c).

## BACKGROUND

### I.      Annexation Agreement & Amendment

Plaintiffs are the owners of approximately 100 acres of real property (the "Property") located within the City of Oakbrook Terrace, Illinois. (R. 72-1, Def.'s Stmt. Facts ¶ 1; R. 75-1,

Pls.' Stmt. Facts ¶¶ 1, 6.)  Plaintiff Robert Krilich is the beneficial owner of the Property.  (Pls.' Stmt. Facts ¶ 2.)  Defendant is the City of Oakbrook Terrace, a municipal corporation located in DuPage County, Illinois.  (*Id*. ¶ 3; Def.'s Stmt. Facts ¶ 3.)  The Property has generally been developed with utilities, roads, and stormwater detention facilities.  (Pls.' Stmt. Facts ¶ 9.)  Also, a portion of the Property has been developed with office, restaurant, and townhouse buildings. (*Id*.)  In addition, approximately 20 acres of the original 120-acre Krilich parcel were sold to Lincoln Properties on which two high-rise office buildings, a building housing the Joint Commission on Hospital Accreditation, a restaurant, and the Staybridge Suites were constructed. (*Id*. ¶ 8; Def.'s Stmt. Facts ¶ 10.)

The City and Plaintiffs entered into an Annexation Agreement in June 1972, pursuant to which the Property was annexed to the City.  (Pls.' Stmt. Facts ¶ 11; Def.'s Stmt. Facts ¶ 6.) Upon annexation, the Property, by ordinance, was zoned "B-4 service district," with a special use for a planned unit development ("PUD") which, at the time, permitted both commercial and residential developments, including the construction of 2,731 multi-family residential dwelling units.  (Pls.' Stmt. Facts ¶¶ 14, 21; Def.'s Stmt. Facts ¶ 8.)

On June 29, 1976, the City and Plaintiffs entered into an agreement entitled "Amendment to Annexation Agreement," which deleted paragraph 7 of the Annexation Agreement and inserted, in its place, the requirement that "the owner agrees to comply with all building and zoning ordinances of the City of Oakbrook Terrace in force at the time owner makes any application to the City . . . .", and which contained a recitation that the amendment was to be binding "for a full term of ten (10) years commencing as of the date this agreement is executed [June 29, 1976] as provided by statute."  (Def.'s Stmt. Facts ¶ 9.)

**II.     1986 Agreement**

On November 28, 1986, Lincoln Properties, the City, and Plaintiffs – or their

predecessors in interest – entered into an agreement which recites:

> The term of the Annexation Agreement has expired, and the parties are not
> seeking to amend or extend it.  However, development of and construction on the
> land which is the subject of the Annexation Agreement and PUD ordinance has
> progressed to a substantial extent; and, thus, although the term of the Annexation
> Agreement has expired, the owners from time to time of the various parcels of the
> land described in the Annexation Agreement will be entitled to complete the
> development of and construction on their respective parcels, as provided in the
> Annexation Agreement, the PUD ordinance and this agreement.

(*Id.* ¶ 11.)  In ratifying the applicability and enforceability of the Annexation Agreement,

Amendments, and the 1986 Agreement, the City issued multiple building permits and certificates

of occupancy for various developments within the Annexation Property, including One Lincoln

Centre, the Redstone Restaurant, and the Staybridge Suites, among others.  (Pls.' Stmt. Facts ¶

28.)

**III.     Comprehensive Plan & Re-Zoning of Krilich Property**

In 2001, the City adopted an official Comprehensive Plan, which stated that the Plan

> [h]as as its foundation an overall set of goals and objectives for the character,
> accessibility, public services and finances of the City.  The Comprehensive Plan
> is a declaration of intent.  It is advisory and does not by itself constitute a
> regulation nor should it be construed to supercede the City's Zoning Code or
> individual special use permits and ordinances previously granted.  When this plan
> is adopted by the City Council, all goals and objectives herein become City
> policy, but not law.

(Def.'s Stmt. Facts ¶¶ 25, 26.)  The Comprehensive Plan provided for nine planning units and

specifically stated that:

> Planning Unit 5, therefore, can be characterized as the area where the greatest
> change can be anticipated in the City.  This area is recognized as an unique urban
> environment, and as such, offers an opportunity for creative planning concepts

4

and techniques. Such an opportunity is unique in the history and future of the
City and requires extraordinary efforts to guarantee high quality development in
harmony with the surrounding area.

(*Id.* ¶¶ 27, 28.) According to the Comprehensive Plan, the Krilich Property – which was located

in Planning Unit 5 – was zoned B-4 service. (*Id.* ¶ 29.)

On March 25, 2003, the City passed an ordinance amending its Official Comprehensive

Plan and creating a new area designated the "Unit 5 Area." (Pls.' Stmt. Facts ¶ 31.) The Unit 5

Area consists of approximately 236 acres of land within the City and encompasses the Property.

(*Id.* ¶ 32.) On November 25, 2003, the City adopted an ordinance creating a new zoning district

called "M-U" or "Mixed Use Zoning District." (*Id.* ¶ 34.) On January 13, 2004, the City

adopted an ordinance re-zoning the Property from B-4 with a Special Use for a Planned Unit

Development to "M-U." (*Id.* ¶ 35.) As a result of the zoning change, the Property is now zoned

for the construction of single family dwelling units, as opposed to the approximately 2,700

multi-family units under the previous zoning ordinance. (Def.'s Stmt. Facts ¶¶ 8, 37.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining

summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving

party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, ___ U.S. ___, 127

S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007).  The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"  *Anderson v. Liberty Lobby*, 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

## ANALYSIS

Plaintiffs bring three constitutional claims against Defendant pursuant to 42 U.S.C. § 1983.  To state a constitutional claim under Section 1983, a plaintiff must allege that a government official (1) acting under color of state law, (2) deprived him of a right secured by the Constitution or laws of the United States.  *Christensen v. County of Boone, IL,* 483 F.3d 454, 459 (7th Cir. 2007).

## I.      Class of One Equal Protection Claim – Count II

In Count II of the Complaint, Plaintiffs allege that the City violated their equal protection rights under the Fifth and Fourteenth Amendment.[1]  "The purpose of the Equal Protection Clause of the Fourteenth Amendment is to 'secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'"  *Smith v. City of Chicago,* 457 F.3d 643, 650 (7th Cir. 2006) (citation omitted).  "If no fundamental rights or suspect categories are at

---

[1]  The Supreme Court's approach to Fifth Amendment equal protection claims has "been precisely the same as to equal protection claims under the Fourteenth Amendment."  *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.,* 483 U.S. 522, 542 n. 21, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987) (citation omitted).

issue, '[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *St. John's United Church of Christ v. City of Chicago,* 502 F.3d 616, 637-38 (7th Cir. 2007) (citation omitted).

Plaintiffs do not argue that their fundamental rights or any suspect categories are at issue. Instead, Plaintiffs bring a "class of one" equal protection claim, which the Seventh Circuit has described as follows: "These are cases in which the plaintiff does not claim to be a member of a class that the defendant discriminates against, but argues only that he is being treated arbitrarily worse than some one or ones identically situated to him." *Lauth v. McCollum,* 424 F.3d 631, 633 (7th Cir. 2005). The *Lauth* decision further instructs that "the target of class-of-one cases is 'governmental action wholly impossible to relate to legitimate governmental objectives.'" *Id.* at 634 (citation omitted). Although the Seventh Circuit recognizes equal protection claims brought by a "class of one," it is difficult to succeed on such a claim. *Maulding Dev., LLC v. City of Springfield, Ill.,* 453 F.3d 967, 969-70 (7th Cir. 2006). Specifically, to establish a class of one equal protection claim, Plaintiffs must show that: (1) the City has intentionally treated them differently from others who are similarly situated; and (2) there is no rational basis for the different treatment or the cause of the different treatment is based on the City's "totally illegitimate animus" toward Plaintiffs. *See St. John's United Church of Christ,* 502 F.3d at 638; *Maulding Dev.,* 453 F.3d at 970.

Here, Plaintiffs argue that there was no rational basis for the City's re-zoning of the Property. "The rational-basis test is a lenient standard; the government's action simply 'cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity

of treatment and *some* legitimate governmental purpose.'" *Smith,* 457 F.3d at 652 (citation omitted) (emphasis in original). Under the rational-basis test, "the burden is upon the challenging party to eliminate any 'reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Id.* (citation omitted); *see also Lauth,* 424 F.3d at 634 ("Governmental action only fails rational basis scrutiny if no sound reason for the action can be hypothesized.") (citation omitted).

Plaintiffs fall short of their burden because Defendant has set forth a rational basis for its zoning decision, namely, that re-zoning the Property to mixed-use zoning fulfilled the City's development needs for single-family housing. Specifically, after developing the 2001 Comprehensive Plan, the City hired a land planning firm to explore the development potential of the relevant planning unit – Unit 5. (Def.'s Stmt. Facts ¶ 31.) The project director of the land planning firm made recommendations to the City based on his background, research, and individualized analysis and determined that the City had a disproportionately low amount of single-family homes compared to multi-family homes. (*Id.* ¶¶ 32, 33, 36, 37, 39.) In addition, the project director based his decision on the traffic patterns in Planning Unit 5. (*Id.* ¶ 38.) In the end, the City adopted the Unit 5 Area Plan that the land planning firm recommended. (*Id.* ¶ 40.)

Nevertheless, Plaintiffs contend that the City's rationale is in dispute arguing that it is unclear if the City's objectives will ever be achieved. Whether Plaintiffs dispute the City's objectives or whether the City will achieve its objectives is not the standard under the Court's rational-basis analysis. Instead, Plaintiffs must establish that it is "wholly impossible" that Defendant's re-zoning of the Property relates to a legitimate governmental objective. *See Vision*

*Church v. Village of Long Grove,* 468 F.3d 975, 1001 (7th Cir. 2006) (citation omitted); *see also Lauth,* 424 F.3d at 634. Plaintiffs have failed in this showing. Therefore, the Court need not discuss whether the City has intentionally treated Plaintiffs differently from others who are similarly situated. *See Maulding Dev.,* 453 F.3d at 970. The Court thus grants Defendant's summary judgment motion as to Count II of the Complaint.

## II.     First Amendment Retaliation Claim – Count III

In Count III of the Complaint, Plaintiffs allege that Defendant's actions violated their First Amendment right to seek judicial relief without retaliation. Plaintiffs base their First Amendment retaliation claim on the City's removal of the Property from the Storm Water Ordinance Exemption list and the re-zoning of the Property to a Mixed Use Zoning District. Plaintiffs specifically contend that the City's actions against the Property were in direct retaliation for Krilich exercising his right to litigate claims against the City in the Circuit Court of DuPage County, including Krilich's lawsuit in which Plaintiffs sought to recover building permit fees.     As the Supreme Court has explained, "the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Rest., Inc. v. NLRB,* 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). Accordingly, the Constitution guarantees that citizens must "have a reasonably adequate opportunity to raise constitutional claims before impartial judges." *Woodford v. Ngo,* ___ U.S. ___, 126 S.Ct. 2378, 2404, 165 L.Ed.2d 368 (2006). Although speech during the course of litigation may be protected by the First Amendment, the Seventh Circuit has unequivocally held that retaliation claims based on filing lawsuits in state court are not actionable under 42 U.S.C. § 1983. *See Batagiannis v. West Lafayette Cmty. Sch. Corp.,* 454 F.3d 738, 742 (7th Cir. 2006).

As the Seventh Circuit reasoned, "[s]tate courts are quite capable of protecting access to their own processes; using the Constitution to achieve that objective risks turning all claims arising under state law into federal offenses, which § 1983 is not designed to do." *Id.* at 743. Based on this clear precedent, Plaintiffs' First Amendment retaliation claim is not actionable under Section 1983. The Court thereby grants Defendant's summary judgment motion as to Count III of the Complaint.

### III.    Substantive Due Process Claim – Count I

In Count I of their Complaint, Plaintiffs allege that the City violated their substantive due process rights based on the City's deprivation of their property interests. "The substantive due process component of the Fourteenth Amendment" bars "'certain government actions regardless of the fairness of the procedures used to implement them.'" *Wudtke v. Davel* 128 F.3d 1057, 1062 (7th Cir. 1997) (quoting *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). As the Seventh Circuit has explained, "[t]he Supreme Court of the United States has made clear, and this court similarly has cautioned, that the scope of substantive due process is very limited." *Belcher v. Norton,* 497 F.3d 742, 753 (7th Cir. 2007); *see also Lee v. City of Chicago,* 330 F.3d 456, 467 (7th Cir. 2003) ("substantive due process is not 'a blanket protection against unjustifiable interferences with property.'") (citation omitted). Unless a governmental action infringes on a plaintiff's fundamental rights, substantive due process requires only that the government's action be rationally related to a legitimate government interest. *Lee,* 330 F.3d at 467. In other words, a government action violates a plaintiff's substantive due process rights if it is "utterly lacking in rational justification" or is arbitrary. *Id.*; *Brown v. Michigan City, Ind.,* 462 F.3d 720, 733 (7th Cir. 2006) (citation omitted). The Seventh Circuit has "recognized the

potential for a substantive due process claim in the context of land-use decisions that are arbitrary and unreasonable, bearing no substantial relationship to the public health, safety or welfare." *Doherty v. City of Chicago,* 75 F.3d 318, 325 (7th Cir. 1996). Nevertheless, "when a substantive-due-process challenge involves only the deprivation of a property interest, a plaintiff must show 'either the inadequacy of state law remedies or an independent constitutional violation' before the court will even engage in this deferential rational-basis review." *Lee,* 330 F.3d at 467 (citation omitted).

Plaintiffs' substantive due process claim does not implicate a fundamental right, such as the right to marry or have children, *see Brown,* 462 F.3d at 732, and only involves the deprivation of a property interest. Therefore, as an initial matter, Plaintiffs must establish (1) that state law remedies are inadequate or (2) that the City violated an independent constitutional right. *See Lee,* 330 F.3d at 467. As discussed above, Plaintiffs have failed to establish an independent constitutional violation under either the Equal Protection Clause of the Fifth and Fourteenth Amendments or the First Amendment's access to courts protections. Thus, the Court turns to whether Plaintiffs have established that state law remedies are inadequate.

Plaintiffs fail to make ***any*** arguments that state law remedies are inadequate under the circumstances, and thus this claim is waived. *See Steen v. Myers*, 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of any legal discussion in a party's briefs amounts to the abandonment of that claim). Assuming, *arguendo*, that Plaintiffs have established that state law remedies are inadequate or that they have an independent constitutional claim, Plaintiffs have failed to argue – let alone establish – the next step of the Court's substantive due process analysis, namely, that

the City's land use practices are "utterly lacking in rational justification." *See Brown,* 462 F.3d at 733. As discussed above, Plaintiffs failed to show it was "wholly impossible" that Defendant's re-zoning related to a legitimate governmental objective. *See Vision Church,* 468 F.3d at 975. Meanwhile, Plaintiffs do not make any rational-basis arguments concerning their other grievances with the City, such as the City's removal of the Property from the Stormwater Ordinance Exemption list.

In sum, "the due process clause may not ordinarily be used to involve federal courts in the rights and wrongs of local planning disputes. In the vast majority of instances, local and state agencies and courts are closer to the situation and better equipped to provide relief." *Doherty,* 75 F.3d at 326 (quoting *Nestor Colon Medina & Sucesores v. Custodio,* 964 F.2d 32, 46-47 (1st Cir. 1992)). Accordingly, the Court grants Defendant's summary judgment motion as to Count I of the Complaint.

## IV. Plaintiffs' State Law Claims

Finally, the Court declines to exercise its supplemental jurisdiction over Plaintiffs' common law claims as alleged in Counts V through VII because the Court is dismissing Plaintiffs' claims over which the Court has original jurisdiction, namely, Plaintiffs' Section 1983 claims. *See Ross v. Board of Educ. of Twp. High Sch. Dist.* #211, 486 F.3d 279, 285 (7th Cir. 2007); 28 U.S.C. § 1367(c)(3). "[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *East-Miller v. Lake County Highway Dep't,* 421 F.3d 558, 564-65 (7th Cir. 2005) (quoting *Groce v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir. 1999)). Section 1367(d) tolls the statute of limitations for 30 days after the Court's dismissal of these

supplemental claims, allowing Plaintiffs to re-file their common law claims in state court without their claims being time-barred. *See Williams Elec. Games, Inc. v. Garrity,* 479 F.3d 904, 907 (7th Cir. 2007).

## CONCLUSION

For these reasons, the Court grants Defendant's Motion for Summary Judgment, denies Plaintiffs' Motion for Summary Judgment, and declines to extend its supplemental jurisdiction over Plaintiffs' remaining state law claims.

**Dated:** January 22, 2008

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**